UNITED STATES of America,
Plaintiff–Appellee,

v.

Hector Francisco MOLINA,
Defendant–Appellant.

No. 90–50129.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 10, 1991.

Decided June 10, 1991.

Michael D. Nasatir, Nasatir & Hirsch, Santa Monica, Cal., for defendant-appellant.

Charles L. Kreindler, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before ALARCON, NORRIS and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Hector Francisco Molina appeals his conviction and sentence after a jury trial on one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Following a guilty verdict, the district court denied Molina's motion for a new trial and entered judgment. The appellant was sentenced to a term of 200 months, followed by five years of supervised release. Molina argues that certain comments made by the prosecutor in closing argument constitute reversible error, that he was denied the effective assistance of counsel at trial, and that the judge erred in determining his sentence under the Sentencing Guidelines. We have jurisdiction to review the judgment under 28 U.S.C. § 1291 and the sentence under 18 U.S.C. § 3742. We affirm both the conviction and the sentence.

## BACKGROUND

The events leading to the appellant's arrest and conviction began in December 1988, when Alvaro Siliezar Cordova ("Alvaro"), a paid DEA informant, purchased a used car at Atlantic Auto Sales, a used car dealership owned by the appellant and his partner, Richard Lopez. There is conflicting evidence as to who initiated the discussion of drug sales. The appellant and Lopez testified that Alvaro "asked them if they knew anyone who would sell him large quantities of cocaine," while Alvaro claimed that the appellant "began asking if Alvaro bought or sold cocaine." Alvaro returned to Atlantic Auto periodically to make payments on the car.

Alvaro completed payment on the car in February or March 1989, and requested that Molina give him the pink slip. The appellant told Alvaro that he could not get the pink slip because he was in serious debt to Carson Toyota, the car dealership that held it. Over the next several months, Alvaro visited Atlantic Auto at least three times each month to demand his pink slip, and on each occasion, Molina repeated that he could not get it because of his financial difficulties. The appellant testified that Alvaro continually asked the appellant to put

him in touch with a source of cocaine, and Molina, Lopez and their secretary, Patricia Molina (unrelated) testified that Alvaro became increasingly upset over Molina's failure to deliver the slip, at times resulting in a shouting match between the two men.

The government's theory at trial was that Molina, his car dealership in financial trouble, decided to arrange a drug deal to earn enough money to pay off Carson Toyota. The government argued that Molina, having located Alvaro as a potential buyer, set about trying to find a source of cocaine. Molina would act as middleman, exacting a transaction fee sufficient to set his financial house in order.

Molina, by contrast, argued at trial that he had no intention of getting involved in drug trafficking. Rather, he contended that Alvaro, sensing an opportunity to earn informant fees, used the pink slip as leverage to induce him to cooperate in a deal that Alvaro set up. Molina claimed that he was fearful that Alvaro would report the nondelivery of the pink slip to the Department of Motor Vehicles. Molina's entrapment defense was based on the theory that the government was at both ends of the drug transaction, with Alvaro acting as the buyer, while simultaneously putting Molina, the would-be middleman, in contact with sources who could supply the cocaine.

The government argued at trial that the episode that ultimately led to Molina's arrest was in fact Molina's third attempt to arrange a cocaine transaction. The first attempt allegedly began on July 25, 1989, when the appellant told Alvaro that he was going to El Paso, Texas, his hometown. Molina claimed that he told Alvaro that he was going to visit his family in the hopes of borrowing sufficient money to pay off his debt, thereby enabling him to give Alvaro his pink slip. Alvaro, on the other hand, testified that the appellant told him that he was going to El Paso to pick up 25 kilos of cocaine. On July 26, 1989, before Molina left for El Paso, he met with Alvaro and Alvaro's "partner," who was in fact DEA Special Agent Arturo Reyes. Molina claimed that he agreed to meet Reyes only as a favor to Alvaro, while Alvaro main-

tained that Molina willingly met with Reyes to discuss Molina's drug connection in El Paso.

Alvaro told Molina that he was going to be out of the country, and that Molina should deal with Reyes in his absence. At the meeting, the appellant wrote his phone number in El Paso on his business card, and gave it to Reyes. Predictably, the parties dispute the substance of their meeting. Molina testified that he told Reyes and Alvaro that, while he had no intention of locating cocaine in El Paso, he would as a favor to Alvaro let Reyes know if he found anything. Reyes and Alvaro testified that Molina was knowledgeable about drug deals, and promised to bring 25 kilos back from El Paso. While Molina conceded that, upon his return from Texas in early August, he told Reyes that he was unable to get the cocaine because his source had been arrested, he testified that he said that only because Alvaro instructed him to do so.

The second transaction that Molina allegedly attempted to arrange began when the parties next spoke on August 25, 1989. Reyes testified that he answered Molina's page, and that Molina told him that he had located some Mexicans who had 400 kilograms of cocaine for sale. Molina, by contrast, testified that he was contacted by a man named Rafael, who claimed to be a friend of Alvaro. Molina contended that Rafael arranged for Alvaro, Rafael, and another man named Joaquin to meet with Molina at Atlantic Auto. The four men did meet at the car dealership, and Molina testified that Alvaro told him that they needed him to act as the middleman in a transaction with the Mexicans. Molina testified that he refused to do so, but agreed to meet again after Alvaro reminded him about the pink slip and said that it was his only hope to escape his financial predicament.

The parties agreed to meet on August 29, 1989 in the parking lot of a Denny's Restaurant to exchange 50 kilograms of cocaine for $13,500 per kilo. Apparently, Joaquin was supposed to arrive in one car with the cocaine, Alvaro in another with the money, and the appellant was supposed to effect the transfer. When Joaquin showed up without the cocaine, claiming that he would go get it after the money was transferred to Molina, the deal fell through.

The appellant testified that Alvaro was very upset that the transaction was not completed, and again mentioned the pink slip. Molina testified that, after telling Alvaro that the DMV was "after him for the titles," Alvaro threatened to tell the DMV that he had not received his pink slip, and to tell the DMV to shut the dealership down.[1] Molina claimed that Alvaro said he would give him a few more days to arrange a successful drug deal.

The third episode, the one that led ultimately to Molina's arrest, began on September 13, 1989, when the appellant contacted Alvaro and told him that an individual named Tino would deliver 50 kilograms of cocaine to the parking lot of Atlantic Auto the next day. Molina testified that he ran into Tino, a person he had met previously, at a restaurant where he was supposed to meet Alvaro. Molina maintained that it was Alvaro's idea to go to this particular restaurant to "see if they could find anyone to supply him with cocaine," and that Alvaro never showed up. Furthermore, Molina contended that Tino called him over to have drinks with him, at which time Molina learned that Tino would be able to supply 50 kilos of cocaine. Alvaro, on the other hand, testified that he never had plans to meet Molina at the restaurant, and that the appellant located Tino, the cocaine source, on his own.

In any case, Alvaro told Reyes about the planned delivery on September 14, and Reyes arranged for surveillance of the lot at Atlantic Auto. When the cocaine did not arrive after several hours of waiting, Alvaro left, and told Molina to page him when he had seen the cocaine. The next day,

1. At trial, a DMV investigator named Santiago testified that he visited Atlantic Auto to investigate a complaint for non-receipt of a pink slip that had been filed on September 14, 1989, by Adelia Velardez, Alvaro's girlfriend.

Molina sent the prearranged message to Alvaro through his pager, and Reyes instructed Alvaro to proceed to the lot. When Alvaro arrived, Molina gave him the key to the trunk of the car.[2] After opening the trunk, Alvaro tested the white substance he found in a cardboard box, and, determining that it was cocaine, sent a message to Reyes through his pager. At that point, the surveilling agents and policemen moved onto the lot and arrested the appellant. The trunk was open at the time of the arrest, and it contained both the partially opened box and a closed blue suitcase. The arresting officer, Agent Leppla, tested the cocaine in the box, and determined that it was cocaine. It was later established that the box and the suitcase contained 49.97 kilos of cocaine. The officers also found a .45 caliber revolver in the trailer office of Atlantic Auto.

At trial, the government called as witnesses Agent Reyes, Alvaro, and Agent Leppla, each of whom was thoroughly cross-examined by Molina's attorney. The defense called the following witnesses: Patricia Molina, to testify about Alvaro's visits to Atlantic Auto regarding the pink slip; Richard Lopez, to establish that Alvaro, and not the appellant, initiated the discussion of drug trafficking; Bill Santiago, to testify about the pink slip complaint the DMV received from Alvaro's girlfriend; Molina himself, to give his version of the entire scenario; and finally four character witnesses to bolster the defense's contention that Molina was not predisposed to commit such a crime. The jury, after being instructed on the entrapment defense, found the appellant guilty.

Following the verdict, the appellant retained new counsel and filed a motion for a new trial based on a claim of ineffective

assistance of counsel. The motion was supported by fifteen declarations concerning all aspects of the case, and were signed by twelve different people, some of whom testified at trial (Lopez and the appellant) and some of whom did not. The declarations purport to highlight evidence pertaining to the appellant's entrapment defense that counsel either did not deem significant or did not investigate adequately. After briefing and a hearing, the judge denied the motion, finding a "total dearth of evidence to support the granting of [a new trial]."[3] RT 1–8–90 at 10. Molina filed a timely notice of appeal.

## DISCUSSION

### A. PROSECUTOR'S CLOSING ARGUMENT

■ The appellant argues that numerous statements made by the prosecutor during closing argument constitute improper attacks on the credibility of the defendant and vouching for government witnesses. The parties agree that, because defense counsel did not object at trial, we review for plain error. *United States v. Kessi*, 868 F.2d 1097, 1107 (9th Cir.1989). The alleged error must be reviewed in the context of the entire record, and this court reverses for plain error only "in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Wallace*, 848 F.2d 1464, 1473 (9th Cir.1988) (quoting *United States v. Young*, 470 U.S. 1, 15–16, 105 S.Ct. 1038, 1046–47, 84 L.Ed.2d 1 (1985)).

■ As a general rule, a prosecutor may not express his opinion of the defendant's guilt or his belief in the credibility of government witnesses. *United States v.*

---

**2.** Molina alleges that the car carrying the cocaine was driven onto the lot at Atlantic Auto by an associate of Tino named Jorge Uribi. An important element of Molina's ineffective assistance claim concerns the allegation that his counsel never investigated why Jorge was permitted to walk off the lot without being apprehended by any of the surveilling agents. Molina argues that that fact supports his theory that the cocaine was supplied by individuals who were cooperating with the government. We address the significance of this claim in the

context of the ineffective assistance of counsel discussion below.

**3.** Later, at the sentencing hearing, the judge stated that *the evidence against the appellant* was "so overwhelming that [he] had to deny the motion [for a new trial]," and that "it is the court's undying obligation to insure that there be a fair and just trial. I believe that you had such a fair trial." RT 2–12–90 at 18.

*McKoy,* 771 F.2d 1207, 1210–11 (9th Cir. 1985). Such prosecutorial vouching, which consists of either placing the prestige of the government behind the witnesses through personal assurances of their veracity or suggesting that information not presented to the jury supports the witnesses' testimony, is improper.[4] *Wallace,* 848 F.2d at 1473; *United States v. Roberts,* 618 F.2d 530, 533 (9th Cir.1980). Vouching is especially problematic in cases where the credibility of the witnesses is crucial, and in several cases applying the more lenient harmless error standard of review, we have held that such prosecutorial vouching requires reversal. *Roberts,* 618 F.2d at 535; *United States v. West,* 680 F.2d 652, 657 (9th Cir.1982); *see also McKoy,* 771 F.2d at 1213.

■ It is also true, however, that the prosecution must have reasonable latitude to fashion closing arguments. *United States v. Gray,* 876 F.2d 1411, 1417 (9th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2168, 109 L.Ed.2d 497 (1990). Inherent in this latitude is the freedom to argue reasonable inferences based on the evidence. *Id.; United States v. Laurins,* 857 F.2d 529, 539 (9th Cir.1988), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 565 (1989). In a case that essentially reduces to which of two conflicting stories is true, it may be reasonable to infer, and hence to argue, that one of the two sides is lying. *Laurins,* 857 F.2d at 539 (statement that defendant was a liar could be construed as a comment on the evidence); *United States v. Birges,* 723 F.2d 666, 672 (9th Cir.) ("neither unusual nor improper for a prosecutor to voice doubt about the veracity of a defendant"), *cert. denied,* 466 U.S. 943, 104 S.Ct. 1926, 80 L.Ed.2d 472 (1984).

■ With these principles in mind, we turn to the prosecutor's statements in this case that the appellant alleges were improper:

[Y]ou could only come to one conclusion: That somebody is lying. And who is that? Who's lying? *Is Special Agent Reyes lying?* Did he get up on the stand under oath and lie to you for the sole purpose of convicting an innocent man? *It's unbelievable.* [RT at 469–70]

*The one who lied to you is the one who is guilty* of possessing with the intent to distribute the cocaine. *And that's the defendant, Frank Molina.* And when you weigh the credibility of the witnesses, remember that there was one witness here who had a greater motive to lie than any other witness, a greater stake in this case than either Art Reyes or Alvaro or Agent Leppla or anybody, and that man was the defendant, Frank Molina. He had the greatest bias in this case and the greatest motive to lie. [RT at 470]

So when you go back into the jury room remember ... that *Mr. Molina lied to you on the stand and remember that the reason he lied to you is because he is guilty,* and that's the only reason and the only motivation for him to lie. [RT at 499]

As the prosecutor correctly noted, the inference is unavoidable that "somebody is lying." Alvaro testified that Molina initiated the talk of drug trafficking; Molina and Lopez testified that Alvaro was the instigator. Alvaro and Reyes testified that Molina went to El Paso to purchase 25 kilos of cocaine; Molina testified that he went there to try to borrow money from his family. Alvaro testified that he met Rafael and Joaquin through Molina, while Molina testified that he first came to know them when they contacted him at Alvaro's suggestion. These are only a few of the many instances of flatly contradictory testimony on important issues in the case, and it was proper for the government to argue that the jury ought not to believe the appellant's version.

---

**4.** The one significant exception to this rule of impropriety is the so-called "invited response" doctrine. *Young,* 470 U.S. at 11–13, 105 S.Ct. at 1044–45; *Wallace,* 848 F.2d at 1474. The doctrine does not apply in this case. All but one of the challenged statements were made during the prosecutor's initial closing argument (as opposed to rebuttal), and therefore could not have been invited, and the defense did not directly challenge the credibility of the government's witnesses.

■ The same cannot be said, however, about the following passage from the prosecutor's closing argument about which the appellant also complains:

> [D]efendant had a problem. There was too much irrefutable evidence. For example, you can't call 10 or 12 agents, surveilling agents, liars. It just doesn't work. You can maybe call one or two liars, but you can't call 10 or 12.... So being an intelligent man, defendant created a story ... [RT at 460].

Unlike statements concerning the veracity of witnesses, this comment cannot be considered an inference based on the evidence. While it is true that Agent Reyes testified that several of the meetings leading to the transaction were under surveillance, the government only called three witnesses—Reyes, Alvaro, and Agent Leppla, the arresting officer. The prosecutor's assertion that there were as many as nine other law enforcement officials who would support their testimony is an improper reference to inculpatory evidence not produced at trial.[5] *Roberts*, 618 F.2d at 534; *see also United States v. DiLoreto*, 888 F.2d 996, 999 (3d Cir.1989) (establishing rule that prosecutor's remarks regarding defendant's guilt or witnesses' credibility, if based on evidence not adduced at trial, require reversal per se).

In *Roberts*, applying a harmless error analysis, we held that it was reversible error for the prosecutor effectively to "tell[ ] the jury that another witness could have been called to support [the key government witness'] testimony." 618 F.2d at 534. In this case, we apply the plain error standard, and we must therefore decide whether, reviewing the entire record, it would be a miscarriage of justice to affirm the conviction in light of the prosecutor's improper argument. The Supreme Court has cautioned that we are to find plain error only where the impropriety

" 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings,' " or where failing to reverse a conviction would amount to a "miscarriage of justice." *Young*, 470 U.S. at 15, 105 S.Ct. at 1046 (internal quotations omitted). Under this strict standard, and in light of the evidence supporting the jury's verdict, we do not believe that permitting that verdict to stand constitutes a miscarriage of justice. We hold that the prosecutor's argument was not plain error.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Molina renews his claim, first raised in the motion for a new trial, that his trial counsel's performance was so ineffective as to amount to a violation of his sixth amendment right to counsel. The customary procedure for raising a claim of ineffective assistance of counsel in this Circuit is by collateral attack under 28 U.S.C. § 2255. *United States v. Rewald*, 889 F.2d 836, 859 (9th Cir.1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 64, 112 L.Ed.2d 39 (1990). We prefer appellants to raise such claims in a habeas proceeding because it permits the district judge first to decide whether the claim has merit, and second, if it does, to develop a record as to what counsel did, why it was done, and what, if any, prejudice resulted. *United States v. Pope*, 841 F.2d 954, 958 (9th Cir.1988). We may, however, address the merits of an ineffective assistance of counsel claim on direct appeal if "the record is sufficiently complete to allow us to decide the issue." *United States v. O'Neal*, 910 F.2d 663, 668 (9th Cir.1990); *Rewald*, 889 F.2d at 859.

Molina alleges four specific errors by his trial counsel: (1) failure to object to the prosecutor's improper closing argument; (2) failure to bring a motion to suppress evidence; (3) failure to prepare defense witnesses before trial; and (4) failure to con-

---

**5.** While it is true that the testimony of these ten other government witnesses would have concerned only what they saw while conducting surveillance, and therefore would not have corroborated the government's case on the contested issues in the case, the jury had no way of knowing that. So far as the jury was concerned, this statement indicated that these uncalled witnesses were prepared to testify to the same facts as Alvaro and Reyes. The impact of such an assertion in a case where the credibility of the witnesses is crucial has been noted by this Court. *See Roberts*, 618 F.2d at 535.

duct adequate investigation. At oral argument, the appellant's counsel made it very clear that his client would like us to decide the ineffective representation claim on direct appeal. Especially given the fact that the issue was raised in the new trial motion, we are inclined to do so. Accordingly, we address this claim on the merits insofar as it is based on the first three alleged shortcomings of counsel. Upon careful review, however, we find that the allegation concerning inadequate pretrial investigation raises a potentially meritorious claim that we simply cannot decide based on the record before us. Rather than rule on that issue now, thereby foreclosing the appellant's right to pursue it in a habeas proceeding, we decline to address it.

■ In reviewing a claim of ineffective assistance of counsel, we must determine, first, whether the appellant has identified material, specific errors and omissions that fall outside the "wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). In so doing, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." *Id.* at 689, 104 S.Ct. at 2065. Deficient performance alone does not necessarily require reversal; we must also decide whether the appellant was prejudiced. To establish prejudice, the appellant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. An appellant who fails to satisfy either the deficient performance or the prejudice prong of the *Strickland* test has failed to make out a claim for ineffective assistance of counsel. *Id.* at 697, 104 S.Ct. at 2069. Because this issue raises mixed questions of law and fact, our

review is de novo. *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir.1986). We turn now to the allegations.

1. *Motion to suppress*

■ Molina argues that trial counsel's decision not to file a motion to suppress the seized cocaine and handgun constitute assistance so ineffective as to violate his right to counsel. We disagree. The cocaine was admissible under any one of several different theories, but the one most strongly supported by the record is the plain view doctrine.[6] The arresting agent's uncontroverted testimony establishes that he discovered the cocaine in an open box in the open trunk of the courier's car. Because the cocaine was admissible, the decision not to file a motion to suppress it was not prejudicial. And as the handgun was never introduced into evidence, and, indeed, was only mentioned in court during the appellant's cross-examination of Agent Reyes, the failure to file a motion to suppress it was not prejudicial. Furthermore, while it is arguably true, as Molina contends, that a defendant has "everything to gain and nothing to lose" in filing a motion to suppress, it is not professionally unreasonable to decide not to file a motion so clearly lacking in merit.

2. *Failure to object to prosecutor's closing argument*

■ We turn next to defense counsel's failure to object during the prosecutor's closing argument. As we have already discussed, that argument contained several statements that come close to impermissible prosecutorial comment on the defendant's credibility and the veracity of the government's witnesses. All but one of those statements, however, were reasonable inferences based on the evidence. It follows that counsel's lack of an objection to those comments was neither profession-

---

**6.** The cocaine was also admissible under the automobile exception to the warrant requirement. *See United States v. Vasquez*, 858 F.2d 1387, 1391 (9th Cir.1988), *cert. denied*, 488 U.S. 1034, 109 S.Ct. 847, 102 L.Ed.2d 978 (1989). Having discovered the cocaine in the box, the officer had the authority to search the closed suitcase. *Id.*

ally unreasonable nor prejudicial to the appellant, and therefore will not support an ineffective assistance claim under *Strickland*.

■ The prosecutor's comment concerning the corroborative government witnesses who did not testify is not dismissed so easily. We held above that that statement alone does not amount to plain error. But just as we find the argument itself to be troubling, so too do we find counsel's passivity in the face of these comments somewhat unsettling. Nonetheless, it does not follow that the failure to object was professionally incompetent.

From a strategic perspective, for example, many trial lawyers refrain from objecting during closing argument to all but the most egregious misstatements by opposing counsel on the theory that the jury may construe their objections to be a sign of desperation or hyper-technicality. Too, it may be that Molina's attorney thought the prosecutor was making an argument helpful to his client's case, and simply did not want to distract him. In a more mundane vein, perhaps defense counsel was polishing his own closing argument, or was otherwise inattentive during the relevant part of the prosecutor's closing. Whatever the actual explanation, *Strickland* requires us to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689, 104 S.Ct. at 2065. We cannot say that the failure to object to the one improper passage in the prosecutor's closing argument was professionally unreasonable.[7]

3. *Failure to prepare defense witnesses*

■ Molina also argues that his counsel did not adequately prepare defense wit-

nesses prior to their testimony. He places special emphasis on the fact that he and his attorney met only four times before trial, with the longest meeting lasting approximately forty minutes. He also contends that the only time counsel met with Richard Lopez, his business partner, was for ten minutes the morning of his testimony in the courthouse cafeteria. We have read the trial transcript, and we conclude that, regardless of the reasonableness of such admittedly limited contact with key witnesses, any errors by counsel did not prejudice the appellant. Lopez' testimony was indeed important, as it went directly to the inducement prong of Molina's entrapment defense. But despite its significance to the appellant's defense, that testimony was very straightforward. In some ten pages of direct examination, defense counsel elicited all of the key information that Lopez had to give, and so we believe that further preparation would not have affected the appellant's defense.

As for the pretrial meetings with the appellant, here too the trial transcript reveals that counsel did a competent, comprehensive job of presenting Molina's testimony on direct examination. Indeed, it is difficult to imagine how counsel could have conducted that examination, which covers some sixty pages in the transcript, if he met with the appellant on only four brief occasions. But whatever the nature or extent of their pretrial discussions, we find that further preparation would not have appreciably affected the appellant's testimony. Accordingly, the appellant was not prejudiced by counsel's behavior, and this ground will not support an ineffective assistance claim.

---

7. Because we find that the failure to object to the prosecutor's argument was not professionally unreasonable, we need not address the prejudice prong of the *Strickland* test. We note, however, that in *Weygandt v. Ducharme*, 774 F.2d 1491, 1493 (9th Cir.1985), we rejected the appellant's ineffective assistance claim on the ground that he had not shown that he was prejudiced by counsel's failure to object to the prosecutor's improper closing argument. Specifically, we held that because the evidence of the appellant's guilt was so overwhelming, it was not reasonably probable that the result of the trial would have been different had counsel

objected. *Id.* While we stated that "Weygandt's attorney should have objected to the prosecutor's improper remarks," *id.*, that statement was dictum, as we based our decision on the lack of prejudice to the appellant. Even so, *Weygandt* does not support the proposition that the failure to object to improper closing argument is deficient representation as a matter of law. The opinion does not indicate what the prosecutor said, and in light of *Strickland*'s requirement that we evaluate each alleged error in the context of the particular case, we have no way of evaluating the statement that it was error not to object.

#### 4. *Inadequate pretrial investigation*

Lastly, Molina argues that his trial counsel did not conduct adequate pretrial investigation.[8] He points to numerous alleged shortcomings, but places special emphasis on the fact that counsel did not seek to discover why the law enforcement officials arrested him, a mere middleman, while expressing no interest in the sources of the cocaine. Molina alleges that the DEA agents inexplicably ignored Rafael and Joaquin, even though the two men claimed in the presence of Agent Reyes and others that they could provide 400 kilograms of cocaine. Too, the appellant contends that the DEA permitted Jorge, the person who drove the car containing the cocaine onto the parking lot at Atlantic Auto, to walk off the lot unmolested. Molina also questions the officers' decision to apprehend him before he transferred the money to Tino, the source of the 50 kilos seized during the arrest. Molina argues that these facts all support his theory that the government, or its agent Alvaro, was involved in supplying the cocaine that he was to traffic.

Molina contends that he was prejudiced by his counsel's failure to investigate these allegations. He maintains that this failure prevented him from presenting his entrapment defense as effectively and persuasively as he might have. Unfortunately, we have no way of knowing from the record whether counsel actually made some initial inquiries into these matters and reasonably decided not to pursue them further, whether he neglected them altogether, and whether any deficient performance in this regard resulted in prejudice to the appellant.[9] Accordingly, we decline to address on direct appeal Molina's claim that his counsel performed inadequate pretrial investigation and that such inadequacy constitutes ineffective assistance of counsel.[10]

To summarize, then, we hold that Molina's ineffective assistance claim fails insofar as it is based on counsel's failure to file a motion to suppress evidence, to object to parts of the prosecutor's closing argument, or to conduct further pretrial preparation of defense witnesses. We decline to address the appellant's ineffective assistance claim based on inadequate pretrial investigation because the record is not sufficiently complete to permit us to decide the issue.

#### C. DISTRICT COURT'S APPLICATION OF THE SENTENCING GUIDELINES [11]

8. We note that *Strickland* itself involved defense counsel's duty to investigate. The Court noted that "[c]ounsel's actions are usually based ... on informed strategic choices made by the defendant and on information supplied by the defendant," 466 U.S. at 691, 104 S.Ct. at 2066, and summarized the duty to investigate as the "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.*

9. Another factor counselling against our deciding this issue on direct appeal is the trial judge's apparent misunderstanding of Molina's argument concerning the other figures involved in the transaction. When new counsel raised the issue at the sentencing hearing, the judge responded as follows:

Your counsel argues that no other defendants have been arrested in this case. That is of no concern to me. They aren't tried. Whether or not they are arrested, they aren't tried before this court. If that argument were extended to the logical extension that unless there are other people arrested and convicted, you can never try a singular defendant, what

then of an individual such as Noriega, who I am not passing judgment on but for the mere extension of that argument, he shouldn't be tried because he's only one person before the court.

RT 2–12–90 at 19. But Molina was not arguing that other defendants must also be before the court in order for him to be found guilty. Rather, he argued that his counsel's pretrial investigation was inadequate because he did not investigate the fact that the other figures involved in this case were not pursued by the authorities. He claimed that this fact supports his contention that they were cooperating with the government in a scheme to entrap him. In that sense, it would be very relevant to Molina's guilt or innocence to know whether the government, working through an informant, supplied Molina with the cocaine that he in turn delivered to the undercover agents.

10. We do not intend, by highlighting certain aspects of the allegation concerning inadequate investigation, to limit the scope of any future habeas proceedings that Molina may pursue.

11. The appellant was sentenced in February 1990, and so we apply the guidelines that were in effect as of November 1989.

### 1. *Acceptance of responsibility*

Molina argues that the district judge erred by not granting him a two-level reduction for acceptance of responsibility under § 3E1.1 of the Sentencing Guidelines. The day after the appellant was found guilty by the jury, and before sentencing, he sent a letter to the judge unequivocally acknowledging his guilt and expressing contrition. The judge, however, without commenting on this issue, adopted the following recommendation from the presentence report:

> It is the probation officer's understanding that Mr. Molina denied culpability during the trial; thus, there does not appear to be a basis for concluding that he has demonstrated affirmative acceptance of responsibility, notwithstanding his letter.

The appellant argues that the judge erred by relying on the presentence report as opposed to his letter of contrition in determining that he had not accepted responsibility.

▉ Section 3E1.1 of the Sentencing Guidelines, entitled "Acceptance of Responsibility," provides:

> (a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal record, reduce the offense level by 2 levels.

> (b) A defendant may be given consideration under this section without regard to whether his conviction is based upon a guilty plea or a finding of guilt by the court or jury or the practical certainty of conviction at trial.

> (c) A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.

U.S.S.G. § 3E1.1. Especially relevant to the instant case is Application Note 2 to this section, which states:

> 2. Conviction by trial does not preclude a defendant from consideration under this section. A defendant may manifest sincere contrition even if he exercises his constitutional right to trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct).

U.S.S.G. § 3E1.1, comment (n. 2). Because "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility," *id.* comment (n. 5), we review such a claim under the clearly erroneous standard. *United States v. Gonzalez*, 897 F.2d 1018, 1019 (9th Cir.1990).

▉ It was the probation officer's understanding—which understanding the sentencing judge adopted—that Molina's conduct *during trial* amounted to a denial of culpability. We interpret this to mean that the decision to deny the appellant a two-point reduction was based upon his testimony at trial, and not upon the fact either that he exercised his right to go to trial or that he claimed at trial that he was entrapped.[12] When testifying at trial, Molina repeatedly contradicted the testimony of the various government witnesses. He did not, of course, contest the fact that he actually possessed cocaine with the intention to distribute it; by its very nature, the entrapment defense entails a concession on the actual criminal activity. But on almost every key incident concerning both his predisposition to engage in drug trafficking and the government's alleged inducement in getting him to cooperate, the appellant

---

**12.** The Guidelines expressly provide that a defendant who goes to trial may still be awarded a reduction under § 3E1.1. U.S.S.G. § 3E1.1(b) and comment (n. 2). Too, our cases clearly establish that a defendant may not be denied the reduction solely on the basis that he chose to exercise his sixth amendment right to go to trial. *Gonzalez*, 897 F.2d at 1020; *see also Unit-* ed States v. *Watt*, 910 F.2d 587, 592 (9th Cir. 1990) (sentencing judge may not consider against the defendant any constitutionally protected conduct). We consider below the issue whether a defendant who claims at trial that he was entrapped may nonetheless be awarded a reduction for accepting responsibility.

provided a story very different from the one the government offered—which, ultimately, was the story the jury believed.[13] Accordingly, we find that the record supports the judge's conclusion that Molina failed to satisfy the requirements of § 3E1.1.

■■■ Whether a particular defendant is entitled to the reduction under § 3E1.1 is a matter the sentencing judge must make in his discretion based upon the entire record. While we uphold the district court's finding that Molina was not entitled to the reduction, we do not hold that the defense of entrapment and a reduction for acceptance of responsibility are necessarily and in all cases incompatible. The sentencing judge must consider all the evidence bearing on the issue of the defendant's contrition—or lack thereof—and decide whether he has made the requisite showing. We have reviewed Molina's trial testimony, and we find ample support for the conclusion that he did not manifest the sort of "affirmative acceptance of personal responsibility" that § 3E1.1 requires. The judge's denial of the reduction was not clearly erroneous.

2. *Quantity of cocaine and offense level calculation*

The appellant also argues that the district court erred in basing its offense level calculation on the amount of cocaine for which the appellant negotiated (50 kilograms) instead of the amount that he actually possessed (49.97 kilograms). Under U.S.S.G. § 2D1.1(c), a defendant who possessed "[a]t least 15 KG but less than 50 KG of Cocaine" has a base offense level of 34 (151–188 months), while possession of "[a]t least 50 KG but less than 150 KG of Cocaine" yields an offense level of 36 (188–235 months). Because the parties do not dispute the facts concerning the amount

negotiated and the amount actually possessed, this is a legal issue that we review de novo. *See United States v. Foreman,* 905 F.2d 1335, 1338 (9th Cir.1990).

The indictment charges that Molina possessed with intent to distribute 49.97 kilograms. Nonetheless, the presentence report, upon which the sentencing judge relied, states:

> Although the defendant produced 49.97 kilograms of cocaine, he negotiated for 50 kilograms which is the amount applied in the guidelines calculation pursuant to Application Note No. 12 of 2D1.1, which references Application Note No. 1 to 2D1.4.

Indeed, Note 12 does provide that "[i]f the offense involved negotiation to traffic in a controlled substance, *see* Application Note 1 of the Commentary to § 2D1.4." U.S.S.G. § 2D1.1, comment (n. 12). It is by virtue of this reference that § 2D1.4, which is captioned "Attempts and Conspiracies," is made applicable to defendants convicted of possession with intent to distribute. *See United States v. Putney,* 906 F.2d 477, 479 (9th Cir.1990).

■■■ It is clear that Molina's offense involved "negotiation to traffic in a controlled substance," and as such Application Note 1 to § 2D1.4 applies.[14] That Note provides in relevant part:

> If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount.

U.S.S.G. § 2D1.4, comment (n. 1). The exception to this rule for a defendant who did not intend to produce, or who was not reasonably capable of producing, the amount negotiated does not apply to the

---

**13.** Although it was not in effect at the time of Molina's sentencing, and hence is of no persuasive authority, we note that Application Note 2 to § 3E1.1 has been amended in a manner consistent with our holding; it now begins:

> This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements to guilt, is convicted, and only then admits guilt and expresses remorse.

U.S.S.G. § 3E1.1, comment (n. 2) (1990).

**14.** The appellant argues that he did not "negotiate" with Tino in order to set up the transaction with Alvaro. Molina's own testimony belies that argument. The appellant clearly spoke with Tino regarding the amount and price of the cocaine that Alvaro was to purchase.

appellant. The district judge properly used the 50 kilogram amount in calculating the appellant's base offense level.

### 3. *Minimal participation*

Lastly, the appellant argues that because he "played only a peripheral role" in the transaction, and because he "was the least culpable of the other participants," he was entitled to a reduction in his offense level as a minimal or minor participant under U.S.S.G. § 3B1.2. Because the sentencing judge's decision on this question rests heavily on the facts, we review that decision for clear error. *United States v. Williams,* 898 F.2d 1400, 1403 (9th Cir. 1990).

■ There is ample factual support for the judge's conclusion that Molina was not a minor participant in the deal. The appellant located a source of cocaine for Alvaro, set the terms of the deal, arranged for the transaction to take place on his used car lot, and was entrusted with 50 kilograms of cocaine. Because the district court is not compelled to find that a defendant who is the least culpable in a particular transaction is therefore a minor participant entitled to a reduction under § 3B1.2, *United States v. Rexford,* 903 F.2d 1280, 1282 (9th Cir.1990), and because the appellant played a significant, indeed formative, role in the criminal activity, the district court's decision not to reduce his offense level was not clearly erroneous.

### CONCLUSION

The appellant's conviction and sentence are AFFIRMED.