**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

DEC 14 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 19-10312 |
| Plaintiff-Appellee, | D.C. No. 2:16-CR-00145-WBS |
| v. | |
| STEPHEN J. DOUGAN, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
Hon. William B. Shubb, District Judge, Presiding

Argued and Submitted November 16, 2020
San Francisco, California

Before: SCHROEDER and BERZON, Circuit Judges, and MENDOZA,** District
Judge.

Stephen Dougan, a lawyer, tried to interfere with the administration of internal

revenue laws. A jury convicted him of corruptly endeavoring to obstruct or impede

an Internal Revenue Service (IRS) audit. He claims the district court misapplied the

---

*This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

**The Honorable Salvador Mendoza, Jr., District Judge for the U.S. District Court
for the Eastern District of Washington, sitting by designation.

rule against hearsay, thus violating his constitutional right to present a defense. He also insists the indictment was constructively amended at trial, the district court improperly denied his post-trial motion to dismiss for prosecutorial misconduct, and cumulative error deprived him of a fair trial. We affirm.

1. Dougan first argues the district court abused its discretion by excluding two pieces of evidence under the rule against hearsay—an email exchange and an alleged offer to pay—that he claims negate the mens rea element of the crime. There was no abuse of discretion.

At trial, Dougan sought to admit the following email exchange into evidence: "Robin [Klomparens]: I have made the decision to provide the IRS the Account info[,] predicated on the case I forwarded you. If your clerk has not done the research, don't worry about it." The district court excluded the email exchange as hearsay.

On appeal, Dougan argues the district court abused its discretion because the email constitutes a verbal act negating the mens rea element of a crime. The email exchange suggests Dougan intended to provide his financial information to the IRS. Yet that principal statement in the email hinges on its truthfulness. In other words, its relevance as exculpatory evidence of his mental state would depend on whether the jury accepted the statement made in the email—"I have made the decision to provide the IRS the Account info"—as true. *See, e.g., United States v. Lloyd*, 807

F.3d 1128, 1161–62 (9th Cir. 2015). Dougan thus offered the key statement in the email for a hearsay purpose. That statement does not constitute a verbal act because Dougan did not offer the email to prove a legal right or obligation or to show that he simply spoke the words. *See United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004). We hold the district court did not abuse its discretion because Dougan tried to admit the email exchange for a hearsay purpose—to prove the truth of the matter asserted.

Still, the offer to pay, which Dougan allegedly made in a meeting with the IRS in 2012, may have included a verbal act. According to Dougan's counsel, he allegedly said, "[l]ook, my accountants made a mistake. Tell me what I owe. I will pay it." Had the IRS accepted the alleged offer to resolve his civil tax liability, it could have affected his legal rights, and legal consequences could have flowed from the fact that he spoke the words. That said, the first statement about his accountant's alleged mistake does not constitute a verbal act; like the email, it hinges on its truthfulness. And that's the critical part of the statement—the part Dougan wanted the district court to admit.

But even if the district court admitted the part of the statement that constituted a verbal act, the alleged offer to pay is irrelevant to negate the mens rea element on the obstruction charge. The eventual offer to resolve his civil tax liability came years after the charged obstructive acts, including the denial of Dougan's petition to quash

the IRS summons. Put simply, the alleged offer has no bearing on his mental state when he attempted to impede or obstruct the IRS's audit. As a result, the district court properly excluded the alleged offer to pay because it was irrelevant to prove his mental state on the obstruction charge.

As a fallback, Dougan urges the court to conclude the district court abused its discretion by refusing to admit the email and alleged offer to pay evidence under the then-existing state of mind exception to the rule against hearsay. We disagree.

The then-existing state of mind hearsay exception provides, in part: "A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)." Fed. R. Evid. 803(3). Courts examine three factors to determine admissibility under this rule: "contemporaneousness, [the] chance for reflection, and relevance." *United States v. Faust*, 850 F.2d 575, 585 (9th Cir. 1988).

Dougan first learned that the IRS began auditing his taxes in November 2007. In September 2008, the IRS sent him a notice that it had selected his 2006 federal return for examination. In October 2008, the IRS sent Dougan several document requests. The next month, the IRS requested additional documents. A month later, Dougan provided a 3-month sample of redacted checks (including checks concealing unreported income). Early in the New Year, the IRS requested more documents.

By the time that Dougan wrote the email in April 2009, he had had months to

contemplate the audit, the requested documents, and whether to comply with—or obstruct—the audit. The time that elapsed between the IRS's document requests and Dougan's response diminished Dougan's email's probative value because his email did not occur contemporaneously to any of the IRS's document requests. In fact, he performed obstructive acts in the intervening period (e.g., providing redacted copies of checks concealing unreported income) and had ample time for reflection before sending the email. The email exchange occurred after the motive for misrepresentation arose.

The alleged offer to pay in 2012 also does not show Dougan's then-existing state of mind, for the same reasons it was irrelevant to prove the mens rea element on the obstruction charge. By the time he made the alleged offer, years had passed since he committed the conduct at issue, and all his efforts to thwart the IRS investigation had failed.

The chance to reflect and lack of contemporaneity weigh heavily against the admission of both pieces of evidence. We therefore hold that the district court did not abuse its discretion by excluding the unreliable evidence under the rule against hearsay.

2. Dougan next argues his indictment was constructively amended at trial. He claims the indictment charged specific conduct, but the Government's proof at trial included uncharged conduct—false advertising expenses and an unreported

5

certificate of deposit. He also claims the jury instructions did not ensure that the jury convicted him based only on the charged conduct but instead allowed the jury to convict him based on uncharged conduct. The Government stresses that the broad allegation in Court Three allows for any evidence showing that Dougan corruptly obstructed the IRS audit. We agree with the Government.

"A constructive amendment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them." *United States v. Davis*, 854 F.3d 601, 603 (9th Cir. 2017) (quoting *United States v. Ward*, 747 F.3d 1184, 1190 (9th Cir. 2014)).

Here, the indictment used the broad, general language "including, but not limited to," which shows the grand jury did not intend to provide an exhaustive list of corrupt acts. *See Stirone v. United States*, 361 U.S. 212 (1960) (holding courts must assume "that under an indictment drawn in general terms a conviction might rest upon a showing" under those general terms); *United States v. Doss*, 630 F.3d 1181 (9th Cir. 2011) (holding that there was no fatal variance between indictment and proof presented at trial because indictment used general terms "among other things"). In addition, the contested evidence falls within specified acts alleged in the indictment: that he provided the IRS with documents that underrepresented his gross income and that he responded to the IRS with false statements about his income. Withholding documents that showed his real income was a component of making

6

false statements, so there was no constructive amendment.

Moreover, the district court instructed the jury that they "are here only to determine whether the defendant is guilty or not guilty of the charges in the Indictment. The defendant is not on trial for any conduct or offense not charged in the Indictment." *See Ward*, 747 F.3d at 1191 (holding instructions requiring the jury to find the conduct charged in the indictment before it may convict provides sufficient assurance that the jury convicted the defendant based solely on the conduct actually charged in the indictment). The to-convict instruction reflected the indictment and properly laid out the elements of the crime for the relevant charging period. *Cf. United States v. Shipsey*, 190 F.3d 1081 (9th Cir. 1999) (holding that the district court constructively amended the indictment because the jury instructions amended the mens rea element of the crime). The district court did not instruct the jury on any alternative theory nor amend the mens rea element of the crime.

In short, the evidence related to the false advertising expenses and the unreported certificate of deposit did not embody a set of facts distinctly different from those provided in the indictment. Nor did the jury instructions substantially alter the crime charged. Dougan has shown no plain error, and his argument thus fails.

3. Dougan predicated his motion to dismiss the indictment on two alternative grounds: the due process clause and the district court's supervisory powers. Under

the due process clause, he claimed the district court should dismiss his indictment on the ground of outrageous government conduct. In the alternative, he argued that the court should dismiss the indictment under its supervisory powers. Dougan reiterates these two theories on appeal.

"We review de novo a denial of a motion to dismiss an indictment on due process grounds." *United States v. Restrepo*, 930 F.2d 705, 712 (9th Cir. 1991). "A prosecution results from outrageous government conduct when the actions of law enforcement officers . . . are 'so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.'" *United States v. Pedrin*, 797 F.3d 792, 795 (9th Cir. 2015) (quoting *United States v. Russell,* 411 U.S. 423, 431–32 (1973)).

On the other hand, "[w]e review the district court's refusal to exercise its supervisory powers for abuse of discretion." *United States v. Ross*, 372 F.3d 1097, 1109 (9th Cir. 2004). Under its supervisory powers, a district court may dismiss an indictment with prejudice for prosecutorial misconduct only if there is "'(1) flagrant misbehavior and (2) substantial prejudice.'" *United States v. Bundy*, 968 F.3d 1019, 1031 (9th Cir. 2020) (quoting *United States v. Kearns*, 5 F.3d 1251, 1253 (9th Cir. 1993)).

Dougan has shown no "outrageous government conduct." *See Pedrin*, 797 F.3d at 795. Distilled to its essence, the two sides present two conflicting stories, one

of which is true: Either Dougan redacted his checks simply to protect privileged client information or he redacted the checks that he wrote to himself to conceal unreported income from the IRS. It was fair for the government to argue Dougan lied. *See, e.g., United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993); *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir. 1991).

Dougan has also not shown that the district court erred in determining that "the government had a good faith basis to argue that Dougan lied to his tax lawyers." The evidence shows that the draft protest letter, which Dougan's lawyers emailed him to review, included a redline lowering the contingency fee range to 25–33.3%. Again, this discrepancy could support one of two conflicting stories: Either his lawyers knowingly submitted an incorrect fee range, or Dougan misled them about his standard contingency fee and did not propose a correction. The Government drew reasonable inferences from evidence admitted at trial and properly based its closing arguments on that evidence. Dougan's due process argument thus fails.

Dougan has also shown no "flagrant misbehavior" by the Government. *See Bundy*, 968 F.3d at 1031. Because we conclude Dougan has not established the first prong of the test, we need not address whether the Government's closing arguments prejudiced him. For these reasons, the district court did not abuse its discretion by refusing to dismiss the indictment under its supervisory powers.

Finding no error, we decline to reach Dougan's claim that cumulative error

9

deprived him of a fair trial.

**AFFIRMED.**