**NOT FOR PUBLICATION**

FILED

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

JUN 12 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-10328 |
| Plaintiff-Appellee, | D.C. No. 3:19-cr-00394-CRB-3 |
| v. | |
| ISTVAN ATTILA KOPACZ, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted May 13, 2024
San Francisco, California

Before: CALLAHAN and NGUYEN, Circuit Judges, and KRONSTADT,[**] Senior District Judge.

Defendant-Appellant Istvan Attila Kopacz appeals his convictions for one count of using a counterfeit access device in violation of 18 U.S.C. § 1029(a)(1) (Count Two), one count of using an unauthorized access device in violation of 18

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable John A. Kronstadt, Senior United States District Judge for the Central District of California, sitting by designation.

U.S.C. § 1029(a)(2) (Count Three), and one count of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) (Count Twelve). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1. The district court properly denied Kopacz's motion of judgment for acquittal pursuant to Federal Rule of Criminal Procedure 29. We review the denial of the motion *de novo*. *United States v. Amintobia*, 57 F.4th 687, 697 (9th Cir. 2023). The court "view[s] the evidence in the light most favorable to the Government" and "affirm[s] 'if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id*. (quoting *United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc)).

Bryan Jang's testimony was sufficient to establish that Kopacz's conduct affected interstate commerce, which is a required element of Counts Two and Three. *See* 18 U.S.C. § 1029(a). Based on his experience and duties as Vice President of Corporate Security at First Republic Bank ("FRB"), Jang was qualified under Federal Rule of Evidence 602 to testify about "normal company procedures" associated with his work, on which "he had ample personal knowledge to testify." *United States v. Thompson*, 559 F.2d 552, 554 (9th Cir. 1977). Jang testified that every ATM transaction involving an FRB account is routed through a third-party payment processor, that FRB contracted exclusively with Fiserv as its third-party payment processer, and that Fiserv only had servers

2

located outside of California, *i.e.*, in New Jersey and Texas. Although Jang was not an employee of Fiserv, did not operate the software that verified ATM transactions, and as part of his investigation did not verify how FRB's ATM network systems were operating, he testified that he would not be able to do his job if he did not know how FRB ATM transactions were processed. Jang's testimony that he did not know the location of the Fiserv server that "actually processed" each of unauthorized transactions, was not material to whether the transactions traveled through interstate commerce because he testified that all of the servers were located outside of California. This testimony, together with the evidence showing that each transaction was time-stamped in Eastern Time, which was when the transaction "hit the Fiserv servers in New Jersey," was sufficient for a rational jury to find beyond a reasonable doubt that the transactions affected interstate commerce.

The evidence was also sufficient to establish that Kopacz knowingly used a means of identification belonging to another person, which is a required element of Count Twelve. *See* 18 U.S.C. § 1028A(a)(1). Kopacz contends that the "means of identification" at issue — ATM cards and personal identification numbers ("PINs") — could have belonged to a non-natural person, *e.g.,* a corporation, and for that reason Kopacz's knowledge that they belonged to "another person" cannot be inferred. However, a trier of fact may "rely on common sense" and "ordinary

3

human experience" to make such an inference. *United States v. Doe*, 842 F.3d 1117, 1122 (9th Cir. 2016) (quoting *United States v. Gomez-Castro*, 605 F.3d 1245, 1249 (11th Cir. 2010)).  The jury could have reasonably relied on common sense to infer that Kopacz knew that the ATM cards were issued to, and PINs selected by, actual people.  Indeed, in its closing argument, the government asked the jurors to rely on their common sense on this issue. Docket Entry No. 7-4 at 129 ("[Y]ou, as jurors, you bring in your common sense.  As jurors you bring in your world experience.  Any time you have a PIN number, you know that's -- that's essentially the personal identification number of one single real person.").  For these reasons, no "special proof" was required for the jury to infer that Kopacz had knowledge of these facts.  *See Doe*, 842 F.3d at 1122 (quoting *Gomez-Castro*, 605 F.3d at 1249).

2. The district court did not abuse its discretion by admitting, as lay witness testimony, Jang's observations that the "pattern of structured cash withdrawals" appeared to be "signature" to one person and designed to evade detection.  "[T]he line between lay and expert opinion depends on the basis of the opinion, not its subject matter." *United States v. Barragan*, 871 F.3d 689, 704 (9th Cir. 2017) (citing *United States v. Freeman*, 498 F.3d 893, 902 (9th Cir. 2007)).  If an opinion is based upon a witness's personal knowledge and inferences from his or her investigation, rather than experience or training, he or she need not be qualified as

4

an expert. *Freeman*, 498 F.3d at 902. To be sure, "[t]he mere percipience of a witness to the facts on which he wishes to tender an opinion does not trump Rule 702." *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997). However, if the witness's observations are "'common enough' to 'require such a limited amount of expertise,'" they may be appropriately admitted as lay witness testimony. *Id.* at 1245 (quoting *United States v. VonWillie*, 59 F.3d 922, 929 (9th Cir. 1995)).

Although Jang had substantial experience as an investigator of financial crimes, the district court appropriately exercised its discretion to determine that his observations constituted lay testimony based on his role in the investigation of the ATM transactions. Jang testified that there were five identical paired withdrawals of $420 and $380 that were one minute apart. All of these paired transactions occurred in a small geographic radius over a two-day period. Jang's testimony that all of the paired transactions appeared to be structured by the same person to evade ATM withdrawal limits and fraud detection was a "common enough" observation that did not require "demonstrable expertise." *Figueroa-Lopez*, 125 F.3d at 1245–46.

Even if Jang's testimony were construed as expert testimony, its admission would be harmless error. Kopacz argues that this testimony was essential to the government's effort to establish his "intent to defraud." Once again, even without

Jang's testimony, a commonsense interpretation of the evidence by the jurors would have led to the same conclusion given the similarity and proximity of the five paired withdrawals. Further, the testimony did not create the risk that there was "an imprimatur of scientific or technical validity to the entirety of his testimony." *Freeman*, 498 F.3d at 903. "While witnesses who testify as an expert may receive 'unmerited credibility' for their lay testimony . . . the converse is not true: a lay witness's testimony carries no special weight, even if at points the lay witness has recourse to relevant background and training." *United States v. Gadson*, 763 F.3d 1189, 1212 (9th Cir. 2014) (quoting *Freeman*, 498 F.3d at 903).

3. The district court also did not err by requiring Kopacz to display his tattoos to the jury. Kopacz contends that during a pre-trial hearing, the parties reached the following agreement, which the district court approved: If Kopacz stipulated to the authenticity of certain photographs of his tattoos that were taken while he was in pre-trial custody, the government would not pursue its request that Kopacz be required to display his tattoos to the jury.

"When the prosecution makes a 'deal' within its authority and the defendant relies on it in good faith, the court will not allow the defendant to be prejudiced as a result of that reliance." *United States v. Shapiro*, 879 F.2d 468, 471 (9th Cir. 1989) (citing *United States v. Goodrich*, 493 F.2d 390, 393 (9th Cir. 1974)). However, at the pre-trial hearing on this issue, when defense counsel stated the proposed

6

agreement, government counsel only stated, "I think that should be fine, Your Honor." This is not a clear statement of a binding prosecutorial agreement. *Cf. United States v. Bowen*, 857 F.2d 1337, 1340–42 (9th Cir. 1988) (excluding polygraph evidence at trial, in part, because government represented to defense and the court several times that the government would not seek its admission, including by stating "there's been an agreement that mention of the polygraph will not be made"); *Shapiro*, 879 F.2d at 471–72 ("The government flatly denied any intention to use Shapiro's prior conviction by agreeing 'not to offer evidence of Mr. Shapiro's prior felony conviction or cross-examine him as to that conviction.'").

Even if the government's statement at the pre-trial hearing were construed as a binding agreement, the outcome would not change. During the direct examination of Special Agent Lopez, the government sought to ask her to describe the images of the tattoos shown in the in-custody photographs of Kopacz and to compare them with those that appeared in the photographs of a person taken by the ATM surveillance cameras. Kopacz objected, and the district court sustained the objection. The district court then stated that, in light of its ruling, it would permit the government to request that Kopacz display his tattoos to the jury because at the time of the pre-trial hearing, the government likely made its statement "in contemplation" that the testimony of Agent Lopez would be admitted. The district court did not abuse its discretion in making this determination. The ruling was

consistent with the reasoning behind sustaining Kopacz's objection to the testimony of Agent Lopez — it was for the jury to decide if the photographs showed the same tattoos.

4. During the in-court display of Kopacz's tattoos, the prosecutor stated that an ATM surveillance photograph, which was contemporaneously shown, "display[ed] the Defendant's face." Regardless of whether the comment was isolated, stray, or even inadvertent, it was clearly improper. A prosecutor has a "special obligation to avoid improper suggestions and insinuations" and "has no business telling the jury his individual impressions of the evidence." *United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir. 1992). The prosecutor in essence "express[ed] an opinion of the defendant's guilt," which is plainly not permitted. *United States v. Hermanek*, 289 F.3d 1076, 1098 (9th Cir. 2002) (citing *United States v. Molina*, 934 F.2d 1440, 1444 (9th Cir. 1991)).

Because the defense did not object to this statement during trial, our review is under the plain error standard. *United States v. Weatherspoon*, 410 F.3d 1142, 1150–51 (9th Cir. 2005). Under that standard, the error here was not "sufficient to undermine confidence in the outcome of the proceeding." *United States v. Irons*, 31 F.4th 702, 714 (9th Cir. 2022) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)). For example, in *Irons*, an error in the jury instructions "effectively removed from the jury's consideration the only disputed issue." *Id.* at

714. Here, the prosecutor's statement did not take from the jury the question whether Kopacz was the person shown in the ATM surveillance photographs. There was substantial evidence to support the jury's conclusion that he was. Kopacz has not established a reasonable probability that, "but for the error, the outcome of the proceeding would have been different." *Id*. at 711 (quoting *Greer v. United States*, 593 U.S. 503, 507–08 (2021)).

    **AFFIRMED.**