MEMORANDUM **
1. Sufficient evidence supports Ricardo Rubio-Garcia’s conviction for possession of cocaine with intent to distribute. Viewed in the light most favorable to the government, see United States v. Nevils, 598 F.3d 1158, 1164 (9th Cir.2010) (en banc), the evidence showed that Rubio gave directions to a Mexican drug supplier that were to be relayed to a drug courier. Rubio then met the courier at a prearranged location, briefly spoke with him, and got in the passenger seat of the courier’s vehicle. Rubio directed the courier— whose vehicle was transporting ten kilograms of cocaine hidden away in secret compartments — to a stash house where the drugs could be removed. The jury also heard expert testimony that drug trafficking organizations typically do not entrust individuals unfamiliar with the details of the criminal enterprise with the location of a stash house, given the high value of the *719 narcotics stored there. A reasonable jury could infer from this evidence “that [Ru-bio] associated with the criminal venture, participated in it, and sought, by his actions, to make it a success.” United States v. Boykin, 785 F.3d 1352, 1359 (9th Cir.2015). No more was required to convict Rubio under an aiding-and-abetting theory, for which the government argued and on which the jury was instructed. See id.
2. Sufficient evidence supports Rubio’s conspiracy conviction as well. The above-narrated evidence amply demonstrated that Rubio agreed with at least the supplier and the courier to participate in a drug deal and that he intended to aid in its accomplishment. See United States v. Iriarte-Ortega, 113 F.3d 1022, 1024 (9th Cir.1997). The evidence also showed that the vehicle Rubio was directing drove in a pattern consistent with counter-surveillance activities, which “qualify as acts in furtherance of a conspiracy.” United States v. Penagos, 823 F.2d 346, 348 (9th Cir.1987).
It is immaterial whether the evidence showed that Rubio was aware of the entirety of the broader drug conspiracy charged in the indictment. There was no constructive amendment, since the proof at trial was narrower than the charges in the indictment. See United States v. Wilbur, 674 F.3d 1160, 1178 (9th Cir.2012). And any variance from the charged conspiracy was not prejudicial. See United States v. Morse, 785 F.2d 771, 775 (9th Cir.1986). First, this was not a case in which the evidence suggested the existence of two temporally separate conspiracies, which might cast doubt on the jury’s unanimity. See United States v. Echeverry, 698 F.2d 375, 377 (9th Cir.1983) (per curiam). Second, as even Rubio concedes, the defense was not unprepared for the evidence at trial. And third, any risk of prejudicial spillover from evidence irrelevant to the narrower conspiracy was slight. Unlike in Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), Rubio was tried alone, and the jury was not instructed on transference of guilt among co-conspirators. See United States v. Duran, 189 F.3d 1071, 1082-83 (9th Cir.1999).
3. The district court did not plainly err in admitting improper opinion testimony. The case agent in charge of the investigation into the broader drug conspiracy testified as to his interpretation of various intercepted phone calls involving the supplier, the courier, Rubio, and others; he also testified regarding his perceptions of Rubio’s activities on the day of the drug deal. That he reviewed translations of the intercepted conversations and did not listen to the calls in real time does not mean that his testimony lacked proper foundation. He relied on his ample “knowledge and investigation in this case” in forming his opinions, which is all that is required in this context. See United States v. Torralba-Mendia, 784 F.3d 652, 660-61 (9th Cir.2015), In addition, the vast majority of the case agent’s opinion testimony was helpful to the jury and not based on expert knowledge. See id.
However, not all of the case agent’s testimony was properly admitted. The case agent explained the meaning of a few words and phrases that were well within the common understanding of the jurors, and thus not helpful under Federal Rule of Evidence 701. See United States v. Freeman, 498 F.3d 893, 905 (9th Cir.2007). He also initially based his opinion that Rubio was directing the load vehicle to a stash house on his “training and experience,” and he provided some testimony on what is “typical” of drug deals. Each of these opinions fell outside the bounds of proper lay opinion. See Fed.R.Evid. 701, 702; Torralba-Mendia, 784 F.3d at 660.
*720 But Rubio cannot show that any of these errors violated his substantial rights. The case agent’s testimony about what drug deals typically entail merely duplicated what the government’s expert had already said, so any impact the error had on the jury was limited. See United States v. Vera, 770 F.3d 1232, 1240 (9th Cir.2014). And the government corrected the case agent’s improper testimony about Rubio’s role in the car immediately after it was introduced. Defense counsel objected on foundation grounds, which led the prosecution to elicit testimony about Rubio’s role in the load vehicle that was clearly based on the case agent’s personal work on the ease.
4. The district court’s failure to instruct the jury on the distinction between the case agent’s lay testimony and his expert testimony did not rise to the level of plain error. See Torra\ba-Men-dia, 784 F.3d at 658-59. The case agent was not qualified as an expert and, as explained above, nearly all of his testimony was well within the bounds of proper lay opinion testimony. Any possible confusion and prejudice were therefore limited, since the jury was not aware of the case agent’s dual roles. See Vera, 770 F.3d at 1242.
5. The district court did not plainly err in admitting expert testimony about the structure of drug organizations. Rubio was charged with conspiracy to distribute and possess cocaine. The expert testimony in question was relevant to the jury’s determination of whether a conspiracy existed and whether Rubio knowingly participated in it. See Torralbu-Mendia, 784 F.3d at 662-63; United States v. Valencia-Amezcua, 278 F.3d 901, 908-09 (9th Cir.2002).
6. The government’s introduction of expert testimony that drug trafficking organizations do not use so-called “blind mules” does not necessitate reversal. Whether or not some drug cartels do in fact use couriers who are unaware that they are transporting drugs is irrelevant in this ease, since Rubio was not a drug courier.[1] Viewed in the light most favorable to the government, the evidence showed that Rubio knew the location of the stash house, which the jury was told is a crucial and highly guarded piece of information within drug conspiracies. Rubio has come forward with nothing to impugn the veracity of the expert’s testimony that drug organizations typically do not entrust individuals unfamiliar with the details of the criminal enterprise with the location of their stash houses. He thus cannot satisfy the requirements of plain error review. See United States v. Sanchez, 659 F.3d 1252, 1257 (9th Cir.2011).
7. The prosecution’s misconduct in questioning the sole defense witness does not provide a basis for reversal. All of the calls about which the witness testified were admitted into evidence, which allowed the jury to independently evaluate the voices at issue. And even Rubio acknowledges that the witness—whose voice-identification testimony was riddled with errors—“did not offer the most compelling testimony on [his] behalf.”
8. Reversal is not required on account of cumulative error. See Parle v. Runnels, 505 F.3d 922, 927 (9th Cir.2007). The few errors at trial fall short of fatally undermining the government’s case, as the evidence more than sufficed to demonstrate Rubio’s guilt on both, counts.
AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

. Per Rubio's unopposed request, this court takes judicial notice of the complaint in United States v. Chavez, Case No. 11-3330-G . (W.D.Tex.2011), in which the United States charged a defendant with conspiring with a drug trafficking organization (separate from the one at issue here) that made widespread use of blind mules.