NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 15-30169 |
| Plaintiff-Appellee, | D.C. No. 3:13-cr-00079-RRB-6 |
| v. | |
| ETIENNE Q. DEVOE, AKA Tien, AKA Tin, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, District Judge, Presiding

Argued and Submitted August 16, 2017
Anchorage, Alaska

Before: GRABER, CLIFTON, and M. SMITH, Circuit Judges.

Defendant Etienne Q. Devoe appeals from the judgment following his jury

convictions for conspiracy to distribute controlled substances and conspiracy to

engage in money laundering. We have jurisdiction pursuant to 28 U.S.C. § 1291,

and we affirm.

1. We decline to overrule *United States v. Freeman*, 498 F.3d 893 (9th Cir.

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

2007).  As a three-judge panel, we lack authority to overrule circuit precedent unless an intervening Supreme Court decision "undercut[s] the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable."  *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).  Devoe identifies no such authority.

2. The district court did not plainly err by permitting Special Agent Clementson to offer lay opinion testimony about the meaning of specialized drug jargon.  "[A]n officer's interpretation of intercepted phone calls may meet Rule 701's 'perception' requirement when it is an interpretation 'of ambiguous conversations based upon the officer's direct knowledge of the investigation.'" *United States v. Gadson*, 763 F.3d 1189, 1206 (9th Cir. 2014) (brackets omitted) (quoting *Freeman*, 498 F.3d at 904–05).  Here, Clementson laid an appropriate foundation—he personally authored the wiretap affidavit, listened to hours of recorded phone calls, and read all of the intercepted text messages.  Given Clementson's direct participation in the investigation, he could permissibly interpret "encoded drug jargon" and "vague or ambiguous statements." *Freeman*, 498 F.3d at 901, 902.  That is precisely what he did when he interpreted "hit me," "mon," "acct," and "people been hittin me."

3. The district court did not plainly err by permitting Detective Dorr to offer expert testimony about the meaning of specialized drug jargon.  "Drug jargon is

2

well established as an appropriate subject for expert testimony and investigating officers may testify as drug jargon experts who interpret the meaning of code words used in recorded calls." *United States v. Vera*, 770 F.3d 1232, 1241 (9th Cir. 2014). Here, Dorr interpreted encoded drug jargon, including the terms "quarter" (a price or quantity of drugs), "play" (a discount), "deuce" (code word meant to disguise the number 2), "change" (one version of a drug product as opposed to another), "steppin' it up" (increasing the volume of transactions), and "where are you at on the count" (have you accumulated enough money to do the next transaction). Dorr also permissibly interpreted "you ready yet," "I'll be ready in a few days," "I'll just wait until, uh, you know," and "so we both don't be out there," because he explained how he applied his expertise regarding the "stepping up concept" and the typical drug distribution and repayment model to reach his interpretations. *See id.* at 1242 (explaining, as an example, that "an agent may permissibly apply his knowledge of the drug manufacturing process to interpret words referring to that process").

4. The district court did not plainly err by failing to instruct the jury regarding the difference between Dorr's expert and lay opinion testimony because, assuming there was error, Devoe has not shown that he was prejudiced. *See Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (explaining that under plain error review, the proponent must show by "a reasonable probability

3

that, but for the error, the outcome of the proceeding would have been different" (internal quotation marks omitted)). In *Vera*, we summarized the concerns underlying the dual role instruction: "[1] an agent's status as an expert could lend him unmerited credibility when testifying as a percipient witness, [2] cross-examination might be inhibited, [3] jurors could be confused[,] and [4] the agent might be more likely to stray from reliable methodology and rely on hearsay." 770 F.3d at 1242.

Taking these in turn, if Dorr obtained unmerited credibility for his assertions as a fact witness, Devoe *benefitted* from that development because he was asking the questions on cross-examination, and presumably wanted the answers to be accepted by the jury. Devoe's cross-examination was not inhibited by his own questions. Devoe's counsel questioned Dorr freely. Continuing on, there was little risk of juror confusion because Dorr did not oscillate back and forth between expert and lay testimony. Instead, he offered expert testimony on direct, and then testified as a percipient witness subsequently on cross-examination. Lastly, Devoe identifies two exchanges during which he contends Dorr relied on hearsay, but neither of his contentions is accurate.

*United States v. Torralba-Mendia*, 784 F.3d 652 (9th Cir. 2015), reinforces our conclusion that Devoe was not prejudiced by the court's failure to instruct the jury on dual capacity testimony. In *Torralba-Mendia*, we held that the failure to

4

issue a dual role instruction did not affect the defendant's substantial rights because "the government bifurcated [the agent's] testimony between his expert testimony and percipient observations," the agent "provided an adequate foundation for most of his observations," the evidence the agent relied upon was given to the jury, and "a substantial amount of evidence, aside from [the agent's] testimony, connected [the defendant] to the conspiracy." *Id.* at 661–62. The same is true here. Dorr's testimony was bifurcated between direct and cross-examination, it was apparent that Dorr's lay witness observations derived from his participation in the investigation, the phone calls and text messages were admitted into evidence, and a substantial amount of evidence, other than Dorr's testimony, tied Devoe to the conspiracy, including Agent Clementson's testimony.

**AFFIRMED.**