NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 15 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff - Appellee, <br><br> v. <br><br> JAMIE YAFA, <br><br> Defendant - Appellant. | No. 23-4108 <br><br> D.C. No. 3:21-cr-01310-WQH-3 <br><br> MEMORANDUM* |
| UNITED STATES OF AMERICA, <br><br> Plaintiff - Appellee, <br><br> v. <br><br> JOSHUA YAFA, <br><br> Defendant - Appellant. | No. 23-4254 <br><br> D.C. No. 3:21-cr-01310-WQH-2 |
| UNITED STATES OF AMERICA, <br><br> Plaintiff - Appellee, <br><br> v. <br><br> JAMIE YAFA, <br><br> Defendant - Appellant. | No. 23-4330 <br><br> D.C. No. 3:21-cr-01310-WQH-3 |

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Argued and Submitted March 4, 2025
Pasadena, California

Before: MURGUIA, Chief Judge, and SANCHEZ and H.A. THOMAS, Circuit Judges.

In this consolidated appeal, codefendants Joshua and Jamie Yafa (the "Yafas") appeal their convictions for one count each of securities fraud, 15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R. § 240.10b-5, and conspiracy to commit securities fraud, 18 U.S.C. § 371. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.[1]

1. The district court did not abuse its discretion by permitting Agent Jeremy Tarwater's expert testimony about the modus operandi of "pump-and-dump" stock manipulation schemes. Under Federal Rule of Evidence 702, expert testimony about general criminal practices is admissible to establish modus operandi and "help[] the jury to understand complex criminal activities." *United States v. Johnson*, 735 F.2d 1200, 1202 (9th Cir. 1984). We commonly approve the use of such testimony in fraud cases. *See, e.g.*, *id.* (affirming the admission of an "expert

---

[1] We hold in a concurrently filed opinion that the district court did not err when it relied on the commentary to United States Sentencing Guidelines § 2B1.1 and used "gain" as an alternative measure for the "loss" attributable to the Yafas.

witness on fraudulent schemes"); *United States v. McCollum*, 802 F.2d 344, 346 (9th Cir. 1986) (affirming the admission of "[e]xpert testimony regarding the typical structure of mail fraud schemes" because it "could help the jury to understand the operation of the scheme").

As the district court reasoned, because the average juror is not familiar with stock manipulation schemes, testimony describing the common steps involved in a pump-and-dump scheme is relevant in assisting the jury to understand the complex nature of such schemes. *Johnson*, 735 F.2d at 1202. And the district court's determination that Tarwater's testimony was not unduly prejudicial is sound. Unlike instances in which we have taken issue with the Government's use of "profile" evidence as substantive evidence of guilt, *see, e.g.*, *United States v. Wells*, 879 F.3d 900, 918 (9th Cir. 2018), Tarwater had no familiarity with the facts of the Yafas's case, and the outline of pump-and-dump schemes he described for the jury was developed years prior to his testimony. *See United States v. Gil*, 58 F.3d 1414, 1422 (9th Cir. 1995) (distinguishing "drug courier profile" and modus operandi testimony).

2. The district court did not err in allowing the Government's undercover witness to testify as a lay witness. The witness provided background information regarding his investigation and interpreted ambiguous terms used in audio recordings of the Yafas and other scheme participants. The Yafas contend that this

testimony is subject to the strictures of Rule 702, and thus the witness should have been qualified as an expert before testifying. Pursuant to Rule 701, an investigating agent may offer lay testimony interpreting "ambiguous conversations based upon his direct knowledge of the investigation." *United States v. Freeman*, 498 F.3d 893, 904 (9th Cir. 2007). But where the basis of a witness's testimony is grounded in specialized knowledge gained from prior investigative experience rather than his or her "own concrete perceptions regarding the investigation" at hand, the opinion falls within Rule 702. *United States v. Gadson*, 763 F.3d 1189, 1210 (9th Cir. 2014). Because this argument was not raised before the district court, we review for plain error. *United States v. Whitney*, 673 F.3d 965, 970 (9th Cir. 2012).

Here, any error the district court may have made in declining to sua sponte intervene was not plain. As we have often observed, "the distinction between lay and expert testimony in this context is a fine one." *Freeman*, 498 F.3d at 904; *see also United States v. Perez*, 962 F.3d 420, 434–38 (9th Cir. 2020). Although the witness acknowledged that his understanding of the phrases he interpreted came from his previous experience as a fraud investigator, he also made clear throughout his testimony that his knowledge was based on his "memory," his "understanding" "at the time," and his "undercover role," in the years-long investigation into the Yafas's activities. The district court could have reasonably concluded that the

undercover witness gained his knowledge "in the context of his investigation as well as through his training and experience." *Gadson*, 763 F.3d at 1213; *id.* at 1208 ("A lay witness's opinion testimony necessarily draws on the witness's own understanding, including a wealth of personal information, experience, and education, that cannot be placed before the jury.").[2]

3.   The district court did not abuse its discretion when it limited cross examination of the Government's forensic accountant.  Trial courts have "wide latitude" to impose reasonable limits on cross-examination.  *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  Despite the Yafas's contention that they were "barr[ed] from crossing on [the witness's] presence in the courtroom throughout trial," they brought the jury's attention to this issue on two separate occasions.  To the extent the district court's ruling properly prevented the Yafas from implicitly eliciting from the witness an opinion concerning the veracity of another witness's testimony, the district court made clear that the Yafas could continue to draw the jury's attention to the witness's presence in the courtroom.  *See United States v.*

---

[2] In addition, the admission of the undercover witness's interpretations did not affect the Yafas's substantial rights because the jury later heard testimony from another witness who interpreted many of the same phrases the undercover witness described.  *Evanow v. M/V Neptune*, 163 F.3d 1108, 1117 (9th Cir. 1998) (holding that the admission of alleged expert opinion was harmless because it was "largely duplicative" of other evidence).  Moreover, the evidence regarding the witness's background and experience investigating stock manipulation schemes would have qualified him to give expert testimony on this subject.  *See Gadson*, 763 F.3d at 1213 n.10.

*Geston*, 299 F.3d 1130, 1136 (9th Cir. 2002).

4. The district court did not abuse its discretion by giving a deliberate ignorance or *Pinkerton* instruction to the jury. A jury instruction may be given "if the instruction is supported by law and has foundation in the evidence." *United States v. Heredia*, 483 F.3d 913, 922 (9th Cir. 2007) (internal quotation marks omitted). The district court reasonably concluded that there was a sufficient evidentiary foundation that the Yafas remained willfully blind to the stock manipulation scheme to warrant a deliberate ignorance instruction. *Id.* Given that a conspiracy was charged and considering the substantial evidence of the Yafas's involvement in the scheme submitted at trial, the district court likewise acted within its discretion in giving a *Pinkerton* instruction. *United States v. Castaneda*, 16 F.3d 1504, 1511 (9th Cir. 1994); *Gadson*, 763 F.3d at 1216 (concluding that a *Pinkerton* instruction did not violate due process where "[t]here was substantial evidence of [the defendant's] participation in the . . . conspiracy").

5. The district court did not commit clear error in finding that loss could not reasonably be determined and in calculating the amount of loss attributable to the Yafas. The evidence in the record established a logical relationship between the Yafas's gain and the victims' losses. The district court properly considered this evidence at the sentencing hearings to calculate loss based partially on actual loss and partially on the Yafas's gain. *See United States v. Armstead*, 552 F.3d 769,

6                                                                                      23-4108

778 (9th Cir. 2008).

**AFFIRMED.**