**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JUN 21 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 20-50182 |
| Plaintiff-Appellee, | D.C. No. 2:16-cr-00390-DSF-AB-4 |
| v. | |
| SYLVIA OLIVAS, AKA Sylvia Lee Gavaldon, | MEMORANDUM* |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-50270 |
| Plaintiff-Appellee, | D.C. No. 2:16-cr-00390-DSF-AB-39 |
| v. | |
| MICHAEL SALINAS, AKA Beef, AKA Just, AKA Skinny, AKA Smiley, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted May 8, 2023
Pasadena, California

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: HURWITZ, and R. NELSON, Circuit Judges.**

Sylvia Olivas and Michael Salinas appeal convictions under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, stemming from their involvement in criminal activities of the Canta Ranas gang. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We affirm.

1.      The district court erred by admitting expert testimony from Officer Robert Rodriguez, Rene Enriquez, and Drug Enforcement Administration Agent Steve Paris without making express reliability findings. *See United States v. Holguin*, 51 F.4th 841, 855 (9th Cir. 2022). However, the error was harmless because the record clearly demonstrates the reliability of these experts. *See United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1190 (9th Cir. 2019) (per curiam).

Reliability can be based on experience. *See, e.g.*, *United States v. Rodriguez*, 971 F.3d 1005, 1018 (9th Cir. 2020) (experience reliably supported testimony about gang "structure and operation"); *United States v. Hankey*, 203 F.3d 1160, 1169–70 (9th Cir. 2000) ("street intelligence" from investigations supported testimony about gang "tenets" including "code of silence"). Similarly, "[o]fficers may testify about their interpretations of 'commonly used drug [or gang] jargon' based solely on their

** This case was decided by quorum of the panel. *See* 28 U.S.C. § 46(d); Ninth Circuit General Order 3.2(h).

2

training and experience." *United States v. Vera*, 770 F.3d 1232, 1241 (9th Cir. 2014) (quoting *United States v. Bailey*, 607 F.2d 237, 240 (9th Cir.1979)).

The record reveals that the experts had ample experience. Rodriguez served as a patrol officer and member of the "Problem-Oriented Policing Team" investigating drug and gang crimes for over a decade. He received over 100 hours of gang-specific training, participated in "[w]ell over 100" criminal investigations, including Canta Ranas, and had contacts with around 50 Canta Ranas members specifically. Enriquez was inducted into the Mexican Mafia, held a position of authority within it, and was familiar with the organization's internal politics. Paris participated in thousands of drug-related investigations related to street gangs, conducted drug-related undercover work, and worked with several confidential informants to investigate drug trafficking. The district court's error in not making express reliability findings was thus harmless.

2. The district court did not err in admitting dual-role testimony from Officer Rodriquez and Enriquez. Although we "encourage" district courts to "clearly separate" lay and expert testimony, *Rodriguez*, 971 F.3d at 1019, there is no single prescribed method to do so. A district court may itself "clarify in the eyes of the jury the demarcation between lay and expert testimony," but "[t]hat distinction can also be revealed through direct or cross examination." *United States v. Freeman*,

498 F.3d 893, 904 (9th Cir. 2007). Here, the government repeatedly announced before the jury when it shifted from "lay" to "expert" testimony.

The district court also did not plainly err by giving the Ninth Circuit's model dual-role testimony instruction, which the parties jointly proposed, at the conclusion of trial rather than during testimony. We have found plain error only where no dual-role instruction was given at all. *United States v. Torralba-Mendia*, 784 F.3d 652, 659 (9th Cir. 2015) (citing *Vera*, 770 F.3d at 1246). Even if it might be prudent to provide a dual-role instruction during witness testimony, failure to do so is not plain error. *See Holguin*, 51 F.4th at 863–64.

Enriquez's previous involvement with the gang leader at the core of the RICO conspiracy also did not warrant exclusion. Enriquez's testimony was grounded in his personal experiences and "rationally based on [his] perception." Fed. R. Evid. 701(a). The record does not suggest any continued affiliation between Enriquez and the Mafia during the alleged conspiratorial acts, the earliest of which occurred two years after Enriquez left the Mafia.

Nor did the district court err in admitting Enriquez's opinion that Olivas's actions suggested that she acted as a secretary for the gang. Expert witnesses are "not permitted to offer a direct opinion on the defendant's guilt or innocence," *Freeman*, 498 F.3d at 906, but Enriquez asserted no such thing, *see United States v. Fleishman*, 684 F.2d 1329, 1335–36 (9th Cir. 1982) (expert may testify that

defendant was the "lookout" in a drug-trafficking operation). Nor was this testimony "to a defendant's actual mental state during the charged offense or testimony which necessarily would imply that ultimate conclusion" in violation of Rule 704(b). *United States v. Morales*, 108 F.3d 1031, 1038 (9th Cir. 1997). Enriquez's testimony merely "described a common practice of those who do have such intent." *Freeman*, 498 F.3d at 906–07; *see also United States v. Gomez-Norena*, 908 F.2d 497, 502 (9th Cir. 1990) (finding no error in officer's testimony that "large amounts of cocaine [were] consistent with an intent to distribute" without offering "opinion of what [defendant] actually thought").

3.      The district court did not err in permitting Case Agent Aaron Gutierrez to testify. A law enforcement officer may testify about the meaning of ambiguous recorded statements based on the officer's "direct perception" of intercepted communications coupled with "other facts he learned during the investigation." *United States v. Gadson*, 763 F.3d 1189, 1207 (9th Cir. 2014) (quoting *Freeman*, 498 F.3d at 904–05). "Such testimony is admissible even if the testifying officer was not a participant in the recorded conversation." *Id.* "A lay witness's opinion testimony necessarily draws on the witness's own understanding, including a wealth of personal information, experience, and education, that cannot be placed before the jury." *Id.* at 1208; *see also Holguin*, 51 F.4th at 865 ("We have allowed officers to

5

interpret communications based on the investigation as a whole and have not required all information supporting lay opinion to be placed before the jury.").

Gutierrez reviewed prison correspondence that he personally collected and other materials he secured throughout his years-long investigation. The foundation laid concerning Gutierrez's investigation sufficiently supported his lay opinions. *See United States v. Barragan*, 871 F.3d 689, 703–04 (9th Cir. 2017). This evidence was also "rationally based on the witness's perception" from his investigative activity. *Vera*, 770 F.3d at 1242 (quoting Fed. R. Evid. 701).

4.      Any error in the formulation of the instructions for the RICO conspiracy was harmless. *See Rodriguez*, 971 F.3d at 1012 ("Jury instructions must be evaluated 'as a whole, and in context,' rather than in piecemeal." (quoting *United States v. Stapleton*, 293 F.3d 1111, 1114 (9th Cir. 2002)). The instructions adequately stated the mens rea necessary for conviction, requiring the jury to find an agreement between two or more persons to conduct or to participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity, and that appellants joined that conspiracy by willfully participating in it while knowing of its object and intending to help further or facilitate the scheme. The instructions therefore adequately captured the underlying offense and the role required of each appellant. *See Smith v. United States*, 568 U.S. 106, 110 (2013) ("To convict a defendant of narcotics or RICO conspiracy, the Government must prove beyond a

reasonable doubt that two or more people agreed to commit a crime covered by the specific conspiracy statute (that a conspiracy existed) and that the defendant knowingly and willfully participated in the agreement (that he was a member of the conspiracy)."); *Salinas v. United States*, 522 U.S. 52, 65 (1997) (holding that although "a conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of [the underlying] criminal offense, . . . it suffices that he adopt the goal of furthering or facilitating the criminal endeavor").

5. Any error in the mens rea instruction for drug conspiracy redounded to Salinas's benefit and does not warrant reversal. *See United States v. Collazo*, 984 F.3d 1308, 1318–19 (9th Cir. 2021) (en banc); *United States v. Irons*, 31 F.4th 702, 717 (9th Cir. 2022) (similar instruction "provide[d] no grounds for reversal" because "[a]t worst, the instruction required the Government to prove more than *Collazo* required, but not less").

6. The district court did not err in refusing Olivas's proposed "willfully" instruction for her money-laundering charge. Because the instructions noted that the jury may not find guilt if it found Olivas did not think she was engaging with unlawful activity, willfulness was adequately outlined. *See Salinas*, 522 U.S. at 65.

7. The district court did not err in its Guidelines calculation for Salinas by adopting the Presentence Report's (PSR) factually supported recommendations. *See Gadson*, 763 F.3d at 1220. The PSR fully described Salinas's involvement in the

conspiracies, including the type and amount of drugs he engaged with. Additionally, the PSR adequately explained why Salinas was responsible for the entire amount of drugs seized. The district court did not abuse its discretion by adopting it in determining the sentence. *See United States v. Gamez-Orduño*, 235 F.3d 453, 464 (9th Cir. 2000).

8. Salinas's lifetime term of supervised release was not substantively unreasonable. Because the court adequately considered the 18 U.S.C. § 3553(a) factors and explained its reasoning, its determination was not plainly erroneous. *See United States v. Rusnak*, 981 F.3d 697, 711 (9th Cir. 2020) (affirming imposition of a lifetime term of supervised release in part because district court had "fully considered the 18 U.S.C. § 3553(a) factors").

9. The district court did not erroneously admit statements about "La Senora" under the co-conspirator hearsay exception. "Under Federal Rule of Evidence 801(d)(2)(E), a statement of one coconspirator is admissible nonhearsay against other coconspirators as an admission of a party-opponent, if the statement was made during the course of and in furtherance of the common objectives of the conspiracy." *United States v. Tamman*, 782 F.3d 543, 553 (9th Cir. 2015).

The district court's determination that these statements were made in furtherance of the conspiracy is not clearly erroneous.[1] *United States v. Anderson*, 56 F.4th 748, 755 (9th Cir. 2022) (per curiam). These statements fall under the exception because they "further the common objectives of the conspiracy or set in motion transactions that are an integral part of the conspiracy." *United States v. Yarbrough*, 852 F.2d 1522, 1535 (9th Cir. 1988). Statements made to "higher ups" of the group may also be "in furtherance" of the conspiracy. *See id.* at 1536 (citing *United States v. Moody*, 778 F.2d 1380, 1382 (9th Cir. 1985)).

**AFFIRMED.**

---

[1] Nor were the statements unduly prejudicial, as they did not directly implicate Olivas. *See United States v. Williams*, 423 F.2d 696, 696 (9th Cir. 1970) (per curiam) (finding no error in admission of statements that did not implicate appellant).